# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

**BRACH EICHLER LLC**
Bob Kasolas, Esq. (BK8850)
Konstantine G. Paschalidis (KP2869)
5 Penn Plaza, 23rd Floor
New York, NY 1000145
Telephone: (212) 896-3794
Facsimile: (973) 618-5575
Attorneys for Plaintiffs *Everything Yogurt  Brands LLC and Villa Pizza, LLC*

| | |
|---|---|
| **EVERYTHING YOGURT BRANDS, LLC** and **VILLA PIZZA, LLC**, <br><br> Plaintiffs, <br><br> -against- <br><br> **FRANCESCO BIANCO, LUCIANO BIANCO, SALVATORE TINDARO VADALA, SALVATORE ZAPPALA, SAITTA GAETANO MARTINO, ROSARIO GRASSOB, DIEGO LoGIUDICE, SFE S.R.L., OLTREIDEA S.R.L., SPE S.R.L., MANGIAMI S.R.L., ORION S.R.L., ROMA FOOD S.R.L., RAVENNA FOOD S.R.L., DM DUE S.R.L., FOOD GROUP SERVICE S.R.L,** <br><br> Defendants. | Civil Action # 1:23-cv-1161 <br><br><br> **COMPLAINT** |

Plaintiffs Everything Yogurt Brands, LLC ("EYB") and Villa Pizza, LLC ("Villa"), (collectively "Plaintiffs"), by and through their attorneys, Brach Eichler LLC, for their Complaint upon their knowledge and belief, and as against Francesco Bianco ("F. Bianco"), Luciano Bianco ("L. Bianco"), Salvatore Tindaro Vadala ("Vadala"), Salvatore Zappala ("Zappala"), Saitta Gaetano Martino ("Martino"), Rosario Grassob ("Grassob"), Diego

1

LoGiudice ("LoGiudice") (collectively "Individual Defendants"), SFE S.R.L. ("SFE"), SPE S.R.L. ("SPE"), Mangiami S.R.L. ("Mangiami"), Orion S.R.L. ("Orion"), Roma Food S.R.L. ("Roma Food"), Ravenna Food S.R.L. ("Ravenna Food"), DM Due S.R.L. ("DM Due"), and Food Group Service S.R.L. ("Food Group")(with all entities collectively "Corporate Defendants")(and all Individual Defendants and Corporate Defendants as "Defendants") allege as follows:

## NATURE OF THE ACTION

1.      Plaintiffs are franchisors of restaurants operating under various brand names, including Villa Pizza ("Villa Pizza"), South Philly Cheesesteaks & Fries ("South Philly"), and Cozzoli's Pizza ("Cozzoli's").

2.      Plaintiffs file this Complaint to recover unpaid royalties and for other damages owed by Defendants under nine (9) franchise agreements for restaurants located in Catania, Novaro, Viterbo, and Rome in Italy.  Since October 2017, Defendants have begun defaulting on their obligations and have not paid any royalties for these restaurants.  As a result, Plaintiffs have suffered damages they seek in this Complaint.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332 (diversity jurisdiction), and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).  In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

4.      Venue is proper in this district under 28 U.S.C. § 1391(b)(3) because of the forum selection clause in New York, New York, in each and every one of the franchise

agreements between Plaintiffs and Defendants (the "Franchise Agreements") granting personal jurisdiction over defendants as per <u>Merrill Lynch, Pierce, Fenner & Smith Inc. v. Lecopulos</u>. 553 F.2d 942 (2d Cir. 1977).

## **THE PARTIES**

5.     EYB is a limited liability company duly organized under the laws of the State of Delaware and registered to do business in the State of New York with a principal place of business located at 25 Washington Street, Morristown, New Jersey.

6.     Villa is a limited liability company duly organized under the laws of the State of Delaware and registered to do business in the State of New York with a principal place of business located at 25 Washington Street, Morristown, New Jersey.

7.     F. Bianco is an individual residing in Misterbianco, Catania, Italy.

8.     L. Bianco is an individual residing in Misterbianco, Catania, Italy.

9.     Vadala is an individual residing in Catania, Italy.

10.     Zappala is an individual residing in Belpasso, Catania, Italy.

11.     Martino is an individual residing in Misterbianco, Catania, Italy.

12.     Grassob is an individual residing in Catania, Italy.

13.     LoGiudice is an individual residing in Misterbianco, Catania, Italy.

14.     The suffix S.R.L. denotes an entity that is the equivalent of a limited liability company in Italy (società a responsabilità limitata).

15.     Upon information and belief, SFE is a foreign company that maintains its principal place of business at Via Eraclito 35, Motta Sant'Anastasia, Catania, Italy.

16.     Upon information and belief, SPE is a foreign company that maintains its

principal place of business at Via Pensaralle, Catania, Italy.

17.     Upon information and belief, Mangiami is a foreign company that maintains its principal place of business at Via Pensaralle, Catania, Italy.

18.     Upon information and belief, Orion is a foreign company that maintains its principal place of business at Via Galileo Galilei 72, Misterbianco, Catania, Italy.

19.     Upon information and belief, Oltreidea is a foreign company that maintains its principal place of business at Via Eraclito 35, Motta Sant'Anastasia, Catania, Italy.

20.     Upon information and belief, Roma Food is a foreign company that maintains its principal place of business at Via Galileo Galilei 72, Misterbianco, Catania, Italy.

21.     Upon information and belief, Ravenna Food is a foreign company that maintains its principal place of business at Via Galileo Galilei 72, Misterbianco, Catania, Italy.

22.     Upon information and belief, DM Due is a foreign company that maintains its principal place of business at Via Galileo Galilei 72, Misterbianco, Catania, Italy.

23.     Upon information and belief, Food Group is a foreign company that maintains its principal place of business at Via Galileo Galilei 72, Misterbianco, Catania, Italy.

24.     Defendants F. Biano, L. Bianco, Vadala, Zappala, Martino, Grassob, and LoGiudice are sued individually as personal guarantors within the Franchise Agreements.

25.     Defendants DM Due and Food Group are sued as corporate guarantors within the Franchise Agreements.

26.     The Franchise Agreements were payable in Euros and the Euro for the past month has traded between the value of one (€1) Euro per one ($1.05) dollar and five cents to one ($1.09) dollar and nine cents.

## FACTS COMMON TO ALL COUNTS

**Belpasso Villa Pizza**

27.     On or about December 10, 2012, Villa entered into a franchise agreement with addendum with SFE, whereby Villa authorized SFE to operate a Villa Pizza restaurant ("Belpasso Villa FA").

28.     The restaurant is located at Contrada Valcorrente 23, Belpasso, Catania, Italy.

29.     Pursuant to the Belpasso Villa FA, F. Bianco and Vadala (i) personally guaranteed SFE's contractual payment obligations; and (ii) contractually agreed that each is individually bound by the terms of the Belpasso Villa FA, including being personally liable for all of SFE's financial obligations under that agreement.

30.     The Belpasso Villa FA expressly requires, among other things, that SFE, F. Bianco and Vadala pay all franchise royalties and other required payments due to Villa on a timely basis.

31.     Regarding royalties, pursuant to the Belpasso Villa FA, SFE, Bianco and Vadala agreed to pay a royalty fee of five (5%) percent each month but no less than two thousand eighty three (€2,083) Euros a month unless the total of 5% of the gross monthly revenues exceeded that minimum in which case it would be the actual total.

32.     Under the Belpasso Villa FA, Villa has the contractual right to step in and operate the franchise upon SFE's (as Franchisee), F. Bianco's and Vadala's default, and the contractual right to collect monetary damages caused by such default(s).

33.     The Belpasso Villa FA also contains post-termination provisions that SFE, F. Bianco and Vadala must contractually comply.  These contractual provisions include returning materials to Villa and complying with contractual restrictive covenants.

5

34.     The Belpasso Villa FA requires SFE, F. Bianco and Vadala to pay attorneys' fees, interest and late fees upon default, as well as damages incurred as a result of Villa's exercising its step-in rights.

35.     SFE, F. Bianco, and Vadala have materially defaulted under the Belpasso Villa FA by failing to make payment of royalties for the years 2019, and 2020.

36.     Upon SFE's, F. Bianco's and Vadala's material default under the Belpasso Villa FA, Plaintiffs notified SFE, F. Bianco and Vadala of this default and demanded payment of all unpaid royalties, but SFE, F. Bianco and Vadala have failed and/or refused to satisfy their contractual payment obligations.

37.     Due to SFE's, F. Bianco's and Vadala's breach of the Belpasso Villa FA, Plaintiffs have been damaged.  Plaintiffs have also been required to retain and pay for the services of an attorney to prosecute this action.  Pursuant to the express provisions of the Belpasso Villa FA, Plaintiffs are entitled to recover their attorney's fees and costs against SFE, F. Bianco, and Vadala.

38.     Excluding the other damages available under the Belpasso Villa FA, SFE, F. Bianco, and Vadala, owe Villa over fifteen thousand six hundred fifty three (€15,653.49) Euros and forty nine cents for royalties.

**SP Etnapolis**

39.     On or about March 7, 2015, EYB entered into a Franchise Agreement with SFE whereby EYB authorized SFE to operate a South Philly Cheesesteaks & Fries restaurant ("SP Etnapolis FA").

40.     The restaurant is located at Contrada Valcorrente 23, Belpasso, Catania, Italy.

41.     Pursuant to the SP Etnapolis FA, F. Bianco (i) personally guaranteed SFE's

contractual payment obligations; and (ii) contractually agreed that each is individually bound by the terms of the Belpasso Villa FA, including being personally liable for all of SFE's financial obligations under that agreement.

42.     The SP Etnapolis FA expressly requires, among other things, that SFE, F. Bianco pay all franchise royalties and other required payments due to Villa on a timely basis.

43.     Regarding royalties, pursuant to the SP Etnapolis FA, SFE and Bianco agreed to pay a royalty fee of five (5%) percent each month but no less than four thousand one hundred sixty seven (€4,167) Euros a month unless the total of 5% of the gross monthly revenues exceeded that minimum in which case it would be the actual total.

44.     Additionally, pursuant to the SP Etnapolis FA, SFE and Bianco agreed to pay a initial franchise fee of thirty give thousand €35,000, but failed to make payment.

45.     Under the SP Etnapolis FA, EYB has the contractual right to step in and operate the franchise upon SFE's (as Franchisee) and F. Bianco's default, and the contractual right to collect monetary damages caused by such default(s).

46.     The SP Etnapolis FA also contains post-termination provisions that SFE and F. Bianco must contractually comply.  These contractual provisions include returning materials to EYB and complying with contractual restrictive covenants.

47.     The SP Etnapolis FA requires SFE and F. Bianco to pay attorneys' fees, interest and late fees upon default, as well as damages incurred as a result of EYB's exercising its step-in rights.

48.     SFE and F. Bianco have materially defaulted under the SP Etnapolis FA by failing to make payment of royalties for the years 2019, and 2020.

7

49.     Upon SFE's and F. Bianco's material default under the SP Etnapolis FA, Plaintiffs notified SFE and F. Bianco of this default and demanded payment of all unpaid royalties, but SFE and F. Bianco have failed and/or refused to satisfy their contractual payment obligations.

50.     Due to SFE's and F. Bianco's breach of the SP Etnapolis FA, Plaintiffs have been damaged.  Plaintiffs have also been required to retain and pay for the services of an attorney to prosecute this action.  Pursuant to the express provisions of the SP Etnapolis FA, Plaintiffs are entitled to recover their attorney's fees and costs against SFE and F. Bianco.

51.     Excluding the other damages available under the SP Etnapolis FA, SFE and F. Bianco owe EYB over six thousand seventy six (€6,076.89) Euros and eighty nine cents in royalties alone.

**Galleria Auchan Villa**

52.     On or about May 1, 2015, Villa entered into a franchise agreement with addendum with Oltreidea, whereby Villa authorized Oltreidea to operate a Villa Pizza restaurant ("Auchan Villa FA").

53.     The restaurant is located at Galleria Auchan, Catania, Italy.

54.     Pursuant to the Auchan Villa FA, F. Bianco, L. Bianco and Zappala (i) personally guaranteed Oltreidea's contractual payment obligations; and (ii) contractually agreed that each is individually bound by the terms of the Auchan Villa FA, including being personally liable for all of Oltreidea's financial obligations under that agreement.

55.     The Auchan Villa FA expressly requires, among other things, that Oltreidea, F. Bianco, L. Bianco and Zappala pay all franchise royalties and other required payments due to Villa on a timely basis.

56.     Regarding royalties, pursuant to the Auchan Villa FA, Oltreidea, F. Bianco, L. Bianco and Zappala agreed to pay a royalty fee of five (5%) percent each month but no less than four thousand one hundred sixty seven (€4,167) Euros a month unless the total of 5% of the gross monthly revenues exceeded that minimum in which case it would be the actual total.

57.     Additionally, pursuant to the Auchan Villa FA, Oltreidea, F. Bianco, L. Bianco, and Zappala agreed to pay the initial franchise fee ("Initial Fee") of three hundred fifty thousand (€350,000) Euros, but only paid three hundred thousand €300,000 Euros, owing Villa a balance of fifty thousand €50,000 Euros.

58.     Under the Auchan Villa FA, Villa has the contractual right to step in and operate the franchise upon Oltreidea's (as Franchisee), F. Bianco's, L. Bianco's and Zappala's default, and the contractual right to collect monetary damages caused by such default(s).

59.     The Auchan Villa FA also contains post-termination provisions that Oltreidea, F. Bianco, L. Bianco, and Zappala must contractually comply.  These contractual provisions include returning materials to Villa and complying with contractual restrictive covenants.

60.     The Auchan Villa FA requires Oltreidea, F. Bianco, L. Bianco and Zappala to pay attorneys' fees, interest and late fees upon default, as well as damages incurred as a result of Villa's exercising its step-in rights.

61.     Oltreidea, F. Bianco, L. Bianco and Zappala have materially defaulted under the Auchan Villa FA by failing to make payment of royalties for the years 2019, 2020, 2021, 2022, and 2023.

62.     Upon Oltreidea's, F. Bianco's, L. Bianco's and Zappala's material default under

the Auchan Villa FA, Plaintiffs notified Oltreidea, F. Bianco, L. Bianco and Zappala of this default and demanded payment of all unpaid royalties, but Oltreidea, F. Bianco, L. Bianco and Zappala have failed and/or refused to satisfy their contractual payment obligations.

63.     Due to Oltreidea's, F. Bianco's, L. Bianco's and Zappala's breach of the Auchan Villa FA, Plaintiffs have been damaged.  Plaintiffs have also been required to retain and pay for the services of an attorney to prosecute this action.  Pursuant to the express provisions of the Auchan Villa FA, Plaintiffs are entitled to recover their attorney's fees and costs against Oltreidea, F. Bianco, L. Bianco and Zappala.

64.     Excluding the other damages available under the Auchan Villa FA, Oltreidea, F. Bianco, L. Bianco, and Zappala owe Villa over twenty thousand eighty seven (€20,087.76) Euros and seventy six cents for royalties plus fifty thousand (€50,000) Euros for the Initial Fee alone.

**Centro Sicilia**

65.     On or about May 1, 2015, Villa entered into a franchise agreement with addendum with SPE and Mangiami, whereby Villa authorized SPE and Mangiami to operate a Villa Pizza restaurant ("Sicilia Villa FA").

66.     The restaurant is located at Centro Sicilia, Misterbianco, Catania, Italy.

67.     Pursuant to the Sicilia Villa FA, F. Bianco, L. Bianco, Martino and Grassob (i) personally guaranteed SPE's contractual payment obligations; and (ii) contractually agreed that each is individually bound by the terms of the Sicilia Villa FA, including being personally liable for all of SPE's financial obligations under that agreement.

68.     The Sicilia Villa FA expressly requires, among other things, that SPE, Mangiami, F. Bianco, L. Bianco, Martino and Grassob pay all franchise royalties and other required payments due to Villa on a timely basis.

69.     Regarding royalties, pursuant to the Sicilia Villa FA, SPE, Mangiami, F. Bianco, L. Bianco, Martino and Grassob agreed to pay a royalty fee of five (5%) percent each month but no less than four thousand one hundred sixty seven (€4,167) Euros a month unless the total of 5% of the gross monthly revenues exceeded that minimum in which case it would be the actual total.

70.     Under the Sicilia Villa FA, Villa has the contractual right to step in and operate the franchise upon SPE's and Mangiami (as Franchisees), F. Bianco's, L. Bianco's, Martino's and Grassob's default, and the contractual right to collect monetary damages caused by such default(s).

71.     The Sicilia Villa FA also contains post-termination provisions that SPE, Mangiami, F. Bianco, L. Bianco, Martino and Grassob must contractually comply.   These contractual provisions include returning materials to Villa and complying with contractual restrictive covenants.

72.     The Sicilia Villa FA requires SPE, Mangiami, F. Bianco, L. Bianco, Martino and Grassob to pay attorneys' fees, interest and late fees upon default, as well as damages incurred as a result of Villa's exercising its step-in rights.

73.     SPE, Mangiami, F. Bianco, L. Bianco, Martino and Grassob have materially defaulted under the Sicilia Villa FA by failing to make payment of royalties for the years 2019, 2020, and 2021.

74.     Upon SPE's, Mangiami's, F. Bianco's, L. Bianco's, Martino's and Grassob's material default under the Sicilia Villa FA, Plaintiffs notified SPE, Mangiami, F. Bianco, L. Bianco, Martino, and Grassob of this default and demanded payment of all unpaid royalties, but SPE, Mangiami, F. Bianco, L. Bianco, Martino, and Grassob have failed and/or refused to satisfy

their contractual payment obligations.

75.     Due to SPE's, Mangiami, F. Bianco's, L. Bianco's, Martino's and Grassob's breach of the Sicilia Villa FA, Plaintiffs have been damaged.  Plaintiffs have also been required to retain and pay for the services of an attorney to prosecute this action.  Pursuant to the express provisions of the Sicilia Villa FA, Plaintiffs are entitled to recover their attorney's fees and costs against SPE, Mangiami, F. Bianco, L. Bianco, Martino and Grassob.

76.     Excluding the other damages available under the Sicilia Villa FA, SPE, Mangiami, F. Bianco, L. Bianco, Martino and Grassob owe Villa over fifty six thousand three hundred sixty seven (€56,367.42) Euros and forty two cents in royalties alone.

**SP Galleria Auchan**

77.     On or about December 15, 2016, EYB entered into a Franchise Agreement with Oltreidea whereby EYB authorized Oltreidea to operate a South Philly Cheesesteaks & Fries restaurant ("SP Auchan FA").

78.     The restaurant is located at Galleria Auchan, Catania, Italy.

79.     Pursuant to the SP Etnapolis FA, F. Bianco, L. Bianco, and Zappala (i) personally guaranteed Oltreidea's contractual payment obligations; and (ii) contractually agreed that each is individually bound by the terms of the SP Auchan FA, including being personally liable for all of Oltreidea's financial obligations under that agreement.

80.     The SP Auchan FA expressly requires, among other things, that Oltreidea, F. Bianco, L. Bianco, and Zappala pay all franchise royalties and other required payments due to Villa on a timely basis.

81.     Regarding royalties, pursuant to the SP Auchan FA, Oltreidea, F. Bianco, L. Bianco, and Zappala agreed to pay a royalty fee of five (5%) percent each month but no less

than four thousand one hundred sixty seven (€4,167) Euros a month unless the total of 5% of the gross monthly revenues exceeded that minimum in which case it would be the actual total.

82.     Under the SP Auchan FA, EYB has the contractual right to step in and operate the franchise upon Oltreidea's (as Franchisee), F. Bianco's, L. Bianco's, and Zappala's default, and the contractual right to collect monetary damages caused by such default(s).

83.     The SP Auchan FA also contains post-termination provisions that Oltreidea, F. Bianco, L. Bianco, and Zappala must contractually comply.   These contractual provisions include returning materials to EYB and complying with contractual restrictive covenants.

84.     The SP Auchan FA requires Oltreidea, F. Bianco, L. Bianco, and Zappala to pay attorneys' fees, interest and late fees upon default, as well as damages incurred as a result of EYB's exercising its step-in rights.

85.     Oltreidea, F. Bianco, L. Bianco, and Zappala have materially defaulted under the SP Auchan FA by failing to make payment of royalties for the years 2019, 2020, 2021, 2022, and 2023.

86.     Upon Oltreidea's, F. Bianco's, L. Bianco's, and Zappala's material default under the SP Auchan FA, Plaintiffs notified Oltreidea, F. Bianco, L. Bianco, and Zappala of this default and demanded payment of all unpaid royalties, but Oltreidea, F. Bianco, L. Bianco, and Zappala, have failed and/or refused to satisfy their contractual payment obligations.

87.     Due to Oltreidea's, F. Bianco's, L. Bianco's, and Zappala's breach of the SP Auchan FA, Plaintiffs have been damaged.  Plaintiffs have also been required to retain and pay for the services of an attorney to prosecute this action.  Pursuant to the express provisions of the SP Auchan FA, Plaintiffs are entitled to recover their attorney's fees and costs against Oltreidea,

F. Bianco, L. Bianco, and Zappala.

88.     Excluding the other damages available under the SP Auchan FA, Oltreidea, F. Bianco, L. Bianco, and Zappala owe EYB over one hundred twenty one thousand five hundred forty four (€121,544.89) Euros and eighty nine cents in royalties and franchise fees alone.

**Novaro Villa**

89.     On or about May 24, 2017, Villa entered into a franchise agreement with addendum with Orion, whereby Villa authorized Oltreidea to operate a Villa Pizza restaurant ("Novaro Villa FA").

90.     The restaurant is located at Via A.B. Savin, s.n., Novaro, Italy.

91.     Pursuant to the Novaro Villa FA, F. Bianco (i) personally guaranteed Orion's contractual payment obligations; and (ii) contractually agreed that each is individually bound by the terms of the Novaro Villa FA, including being personally liable for all of Orion's financial obligations under that agreement.

92.     The Novaro Villa FA expressly requires, among other things, that Orion and F. Bianco pay all franchise royalties and other required payments due to Villa on a timely basis.

93.     Regarding royalties, pursuant to the Novaro Villa FA, Orion and F. Bianco agreed to pay a royalty fee of five (5%) percent each month but no less than four thousand one hundred sixty seven (€4,167) Euros a month unless the total of 5% of the gross monthly revenues exceeded that minimum in which case it would be the actual total.

94.     Under the Novaro Villa FA, Villa has the contractual right to step in and operate the franchise upon Orion's (as Franchisee) and F. Bianco's default, and the

contractual right to collect monetary damages caused by such default(s).

95.    The Novaro Villa FA also contains post-termination provisions that Orion and F. Bianco must contractually comply.  These contractual provisions include returning materials to Villa and complying with contractual restrictive covenants.

96.    The Novaro Villa FA requires Orion and F. Bianco to pay attorneys' fees, interest and late fees upon default, as well as damages incurred as a result of Villa's exercising its step-in rights.

97.    Orion and F. Bianco have materially defaulted under the Novaro Villa FA by failing to make payment of royalties for the years 2019, 2020, 2021, and 2022.

98.    Upon Orion's and F. Bianco's material default under the Novaro Villa FA, Plaintiffs notified Orion and F. Bianco of this default and demanded payment of all unpaid royalties, but Orion and F. Bianco have failed and/or refused to satisfy their contractual payment obligations.

99.    Due to Orion's and F. Bianco's breach of the Novaro Villa FA, Plaintiffs have been damaged.  Plaintiffs have also been required to retain and pay for the services of an attorney to prosecute this action.  Pursuant to the express provisions of the Novara Villa FA, Plaintiffs are entitled to recover their attorney's fees and costs against Orion and F. Bianco.

100.   Excluding the other damages available under the Novara Villa FA, Orion and F. Bianco owe Villa over fifteen thousand five hundred fourteen (€15,514.34) Euros and thirty four cents in royalties alone.

**<u>Viterbo Villa</u>**

101.   On or about October 4, 2017, Villa entered into a franchise agreement with addendum with Roma Food, whereby Villa authorized Roma Food to operate a Villa Pizza

15

restaurant ("Viterbo Villa FA").

102.    The restaurant is located at Centro Commerciale La Tuscia, Via Tangenziale Oveste, Viterbo, Italy.

103.    Pursuant to the Viterbo Villa FA, F. Bianco (i) personally guaranteed Roma Food's contractual payment obligations; and (ii) contractually agreed that each is individually bound by the terms of the Viterbo Villa FA, including being personally liable for all of Roma Food's financial obligations under that agreement.

104.    The Viterbo Villa FA expressly requires, among other things, that Roma Food and F. Bianco pay all franchise royalties and other required payments due to Villa on a timely basis.

105.    Regarding royalties, pursuant to the Viterbo Villa FA, Roma Food and F. Bianco agreed to pay a royalty fee of five (5%) percent each month but no less than four thousand one hundred sixty seven (€4,167) Euros a month unless the total of 5% of the gross monthly revenues exceeded that minimum in which case it would be the actual total.

106.    Additionally, pursuant to the Viterbo Villa FA, Roma Food and F. .Bianco agreed to pay an Initial Fee of seventeen thousand five hundred (€17,500) Euros, but only paid one thousand seven hundred fifty (€1,750) Euros, owing a balance of fifteen thousand seven hundred fifty (€15,750) Euros.

107.    Under the Viterbo Villa FA, Villa has the contractual right to step in and operate the franchise upon Roma Food's (as Franchisee) and F. Bianco's default, and the contractual right to collect monetary damages caused by such default(s).

108.    The Viterbo Villa FA also contains post-termination provisions that Roma Food and F. Bianco must contractually comply.  These contractual provisions include returning

materials to Villa and complying with contractual restrictive covenants.

109.    The Viterbo Villa FA requires Roma Food and F. Bianco to pay attorneys' fees, interest and late fees upon default, as well as damages incurred as a result of Villa's exercising its step-in rights.

110.    Roma Food and F. Bianco have materially defaulted under the Viterbo Villa FA by failing to make payment of royalties for the years 2019, 2020, 2021, and 2022.

111.    Upon Roma Food's and F. Bianco's material default under the Viterbo Villa FA, Plaintiffs notified Roma Foods and F. Bianco of this default and demanded payment of all unpaid royalties, but Roma Food and F. Bianco have failed and/or refused to satisfy their contractual payment obligations.

112.    Due to Roma Food's and F. Bianco's breach of the Viterbo Villa FA, Plaintiffs have been damaged.  Plaintiffs have also been required to retain and pay for the services of an attorney to prosecute this action.  Pursuant to the express provisions of the Viterbo Villa FA, Plaintiffs are entitled to recover their attorney's fees and costs against Roma Food and F. Bianco.

113.    Excluding the other damages available under the Viterbo Villa FA, Roma Food and F. Bianco owe Villa over forty five thousand seventy (€45,070.65) Euros and sixty five cents for royalties alone.

**Aura Villa**

114.    On or about April 23, 2018, Villa entered into a franchise agreement with addendum with Ravenna Food, whereby Villa authorized Ravenna Food to operate a Villa Pizza restaurant ("Aura Villa FA").

115.    The restaurant is located at Centro Commerciale Aura, Viale di Valle Aurelia 30, Rome, Italy.

116.    Pursuant to the Auro Villa FA, F. Bianco (i) personally guaranteed Ravenna Food's contractual payment obligations; and (ii) contractually agreed that each is individually bound by the terms of the Aura Villa FA, including being personally liable for all of Ravenna Food's financial obligations under that agreement.

117.    The Aura Villa FA expressly requires, among other things, that Ravenna Fods and F. Bianco pay all franchise royalties and other required payments due to Villa on a timely basis.

118.    Regarding royalties, pursuant to the Aura Villa FA, Ravenna Food and F. Bianco agreed to pay a royalty fee of five (5%) percent each month but no less than four thousand one hundred sixty seven (€4,167) Euros a month unless the total of 5% of the gross monthly revenues exceeded that minimum in which case it would be the actual total.

119.    Additionally, pursuant to the Aura Villa FA, Ravenna Food and F. Bianco agreed to pay an Initial Fee of fifteen thousand €15,000 Euros but failed to make payment to Villa.

120.    Under the Aura Villa FA, Villa has the contractual right to step in and operate the franchise upon Ravenna Food's (as Franchisee) and F. Bianco's default, and the

contractual right to collect monetary damages caused by such default(s).

121.    The Aura Villa FA also contains post-termination provisions that Ravenna Food and F. Bianco must contractually comply.   These contractual provisions include returning materials to Villa and complying with contractual restrictive covenants.

122.    The Aura Villa FA requires Ravenna Food and F. Bianco to pay attorneys' fees, interest and late fees upon default, as well as damages incurred as a result of Villa's exercising its step-in rights.

123.    Ravenna Food and F. Bianco have materially defaulted under the Aura Villa FA by failing to make payment of royalties for the years 2018, 2019, 2020, 2021, 2022 and 2023.

124.    Upon Ravenna Food's and F. Bianco's material default under the Aura Villa FA, Plaintiffs notified Ravenna Food and F. Bianco of this default and demanded payment of all unpaid royalties, but Ravenna Food and F. Bianco have failed and/or refused to satisfy their contractual payment obligations.

125.    Due to Ravenna Food's and F. Bianco's breach of the Aura Villa FA, Plaintiffs have been damaged.  Plaintiffs have also been required to retain and pay for the services of an attorney to prosecute this action.  Pursuant to the express provisions of the Aura Villa FA, Plaintiffs are entitled to recover their attorney's fees and costs against Orion and F. Bianco.

126.    Excluding the other damages available under the Aura Villa FA, Ravenna Food and F. Bianco owe Villa twenty two thousand one hundred ninety one (€22,191.31) Euros and thirty one cents in royalties alone.

**Maximo Villa**

127.    On or about December 1, 2020, Villa entered into a franchise agreement with addendum with DM Due, whereby Villa authorized Due to operate a Villa Pizza restaurant under the trade name Cozzoli's Pizza ("Maximo Villa FA").

128.    The restaurant is located at Maximo Shopping Center, Via Laurentina 865, Rome, Italy.

129.    Pursuant to the Maximo Villa FA, F. Bianco, Zappala and LoGiudice (i) personally guaranteed DM Due's contractual payment obligations; and (ii) contractually agreed that each is individually bound by the terms of the Maximo Villa FA, including being personally liable for all of DM Due's financial obligations under that agreement.

130.    Pursuant to the Maximo Villa FA, Food Group provided a corporate guarantee for DM Due's contractual payment obligations; and contractually agreed that it is bound by the terms of the Maximo Villa FA, including being liable for all of DM Due's financial obligations under that agreement.

131.    The Maximo Villa FA expressly requires, among other things, that DM Due, F. Bianco, Zappala, LoGiudice and Food Group pay all franchise royalties and other required payments due to Villa on a timely basis.

132.    Regarding royalties, pursuant to the Maximo Villa FA, DM Due, F. Bianco, Zappala, LoGiudice and Food Group agreed to pay a royalty fee of five (5%) percent each month but no less than four thousand one hundred sixty seven (€4,167) Euros a month unless the total of 5% of the gross monthly revenues exceeded that minimum in which case it would be the actual total.

133.    Additionally, pursuant to the Maximo Villa FA, DM Due, F. Bianco, Zappala, LoGiudice, and Food Group agreed to pay an Initial Fee of fifteen thousand (€15,000) Euros but failed to make payment.

134.    Under the Maximo Villa FA, Villa has the contractual right to step in and operate the franchise upon DM Due's (as Franchisee), F. Bianco's, Zappala's, LoGiudice and Food Group's default, and the contractual right to collect monetary damages caused by such default(s).

135.    The Maximo Villa FA also contains post-termination provisions that DM Due, F. Bianco, Zappala, LoGiudice and Food Group must contractually comply.  These contractual provisions include returning materials to Villa and complying with contractual restrictive covenants.

136.    The Maximo Villa FA requires DM Due, F. Bianco, Zappala, LoGiudice and Food Group to pay attorneys' fees, interest and late fees upon default, as well as damages incurred as a result of Villa's exercising its step-in rights.

137.    DM Due, F. Bianco, Zappala, LoGiudice and Food Group have materially defaulted under the Maximo Villa FA by failing to make payment of royalties for the year 2021.

138.    Upon DM Due's, F. Bianco's, Zappala's, LoGiudice's and Food Group's material default under the Maximo Villa FA, Plaintiffs notified DM Due, F. Bianco, Zappala, LoGiudice and Food Group of this default and demanded payment of all unpaid royalties, but DM Due, F. Bianco, Zappala, LoGiudice and Food Group have failed and/or refused to satisfy their contractual payment obligations.

139.    Due to DM Due's, F. Bianco's, Zappala's, LoGiudice's and Food Group's breach of the Maximo Villa FA, Plaintiffs have been damaged.  Plaintiffs have also been required to

retain and pay for the services of an attorney to prosecute this action.  Pursuant to the express provisions of the Maximo Villa FA, Plaintiffs are entitled to recover their attorney's fees and costs against DM Due, F. Bianco, Zappala, LoGiudice, and Grassob.

140.    Excluding the other damages available under the Maximo Villa FA, DM Due, F. Bianco, Zappala, LoGiudice, and Food Group owe Villa over twenty three thousand eight hundred eighty three (€23,883.29) Euros and twenty nine cents in royalties and franchise fees alone.

## COUNT I

### (Breach of Contract as to Corporate Franchisee Defendants – Breach of Franchise Agreements)

141.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

142.    By executing the Franchise Agreements identified above, the franchisee Corporate Defendants became legally obligated to abide by each and every financial obligation arising from these contractual agreements.

143.    By failing to pay royalties as required by the Franchise Agreements, the franchisee Corporate Defendants have materially breached these Franchise Agreements.

144.    By failing to cure the defaults, the franchisee Corporate Defendants have materially breached these Franchise Agreements.

145.    As a result, Plaintiffs have been and will continue to be damaged in an amount to be determined but in no event below the minimum threshold required by 28 U.S.C. § 1332.

## COUNT II

**(Breach of Contract as to Personal Guarantor Defendants – Breach of Personal Guarantee to Franchise Agreements)**

146.   Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

147.   By executing the guarantees of the Franchise Agreement the guarantor Individual Defendants became legally obligated to abide by each and every financial obligation arising from these contractual agreements.

148.   By failing to cure the defaults of the franchisee Corporate Defendants, the guarantor Individual Defendants materially breached their personal guarantees.

149.   By failing to cure the defaults, Food Group materially breached its corporate guarantee.

150.   As a result, Plaintiffs have been and will continue to be damaged in an amount to be determined but in no event below the minimum threshold required by 28 U.S.C. § 1332.

## COUNT III

**(Breach of Covenant of Good Faith and Fair Dealing as to Corporate Franchisee Defendants)**

151.   Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

152.   By entering into the Franchise Agreements identified above, the franchisee Corporate Defendants became bound by a covenant of good faith and fair dealing, which is inherent in every contract.

153.   By reason of Defendants' failure to make the foregoing royalty payments, as more fully set forth above, the franchisee Corporate Defendants have damaged Plaintiffs' brands in

Italy and violated the covenant of good faith and fair dealing and Plaintiffs have been and will continue to be damaged.

154. Plaintiffs' consequential damages directly flow from and are natural of defendants' breach of the Franchise Agreements.

155. The franchisee Corporate Defendants foresaw or should have foreseen the damages prior to the time the Franchise Agreements were made.

156. As a result, Plaintiffs have been damaged in an amount to be determined at trial.

<u>COUNT IV</u>

**(Breach of Covenant of Good Faith and Fair Dealing as to Personal Guarantor Defendants)**

157. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

158. By guaranteeing the Franchise Agreements identified above, the guarantor Individual Defendants and corporate defendant Food Group became bound by a covenant of good faith and fair dealing, which is inherent in every contract.

159. By reason of Defendants' failure to make the foregoing royalty payments, as more fully set forth above, guarantor Individual Defendants and Food Group have damaged Plaintiffs' brands in Italy and violated the covenant of good faith and fair dealing and Plaintiffs have been and will continue to be damaged.

160. Plaintiffs' consequential damages directly flow from and are natural of defendants' breach of the Franchise Agreements.

161. Defendants foresaw or should have foreseen the damages prior to the time the Franchise Agreements were made.

As a result, Plaintiffs have been damaged in an amount to be determined at trial.

24

## COUNT V

### (Unjust Enrichment as to Corporate Franchisee Defendants)

162.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

163.    The franchisee Corporate Defendants have received the benefit of the Franchise Agreements but have failed and/or refused to pay the royalties due thereunder.

164.    Defendants have thereby been unjustly enriched, and Plaintiffs have been and will continue to be damaged.

## COUNT VI

### (Unjust Enrichment as to as to Personal Guarantor Defendants)

165.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

166.    The guarantor Individual Defendants and Food Group have received the benefit of the Franchise Agreements but have failed and/or refused to pay the royalties due thereunder.

167.    Defendants have thereby been unjustly enriched, and Plaintiffs have been and will continue to be damaged.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment against Defendants as follows:

(a) enforcing the post-termination obligations in the Franchise Agreements;

(b) for consequential, direct, compensatory and actual damages;

(c) awarding Plaintiffs pre-judgment and post-judgment interest as applicable;

(d) awarding Plaintiffs all legal fees and expenses incurred in this action, including costs and attorneys' fees pursuant to the Franchise Agreements; and

(e) for any other relief the Court deems just, equitable and proper.

By:    /s/ Bob Kasolas
Bob Kasolas, Esq. (BK8850)
**BRACH EICHLER LLC**
5 Penn Plaza, 23rd Floor
New York, New York 10001
Telephone: (212) 896-3974
Facsimile: (973) 618-5575

Dated: February 10, 2023

## <u>CERTIFICATION PER LOCAL RULE 1.6</u>

I hereby certify that the above referenced matter in controversy is not related to any other

pending matter or arbitration that contains and/or may contain the same or similar causes of

action set forth in this matter.

**BRACH EICHLER LLC**

  /s/ Bob Kasolas
Bob Kasolas, Esq.
**BRACH EICHLER LLC**
*Attorneys for Plaintiffs*
5 Penn Plaza, 23rd Floor
New York, New York 10001
Tel: (212) 896-3794
Fax: (973) 618-5575

DATED: February 10, 2023

27

BE:13047759.1