USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 07/22/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                                                   :
EVERYTHING YOGURT BRANDS, LLC et al.,                              :
                                                                   :
                        Plaintiffs,                                :
                                                                   :              23-cv-01161 (LJL)
            -v-                                                    :
                                                                   :              MEMORANDUM AND
FRANCESCO BIANCO, et al.,                                          :              ORDER
                                                                   :
                        Defendants.                                :
                                                                   :
-------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

Everything Yogurt Brands, LLC ("EYB") and Villa Pizza, LLC ("Villa") (together, "Plaintiffs") bring this action against Francesco Bianco ("F. Bianco"), Luciano Bianco ("L. Bianco"), Salvatore Tindaro Vadala ("Vadala"), Salvatore Zappala ("Zappala"), Saitta Gaetano Martino ("Martino"), Rosario Grassob ("Grassob"), Diego LoGiudice ("LoGiudice") (collectively "Individual Defendants"), SFE S.R.L. ("SFE"), SPE S.R.L. ("SPE"), Mangiami S.R.L. ("Mangiami"), Orion S.R.L. ("Orion"), Roma Food S.R.L. ("Roma Food"), Ravenna Food S.R.L. ("Ravenna Food"), DM Due S.R.L. ("DM Due"), and Food Group Service S.R.L. ("Food Group") (with all entities collectively "Corporate Defendants") (all Corporate and Individual Defendants collectively, "Defendants"), alleging breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment.  Dkt. No. 5 ("Compl."). Defendants have not appeared in this action.  Plaintiffs have filed a motion for default judgment along with an accompanying memorandum of law, declaration, and proposed default judgment. Dkt. Nos. 75–78.

For the following reasons, the motion for default judgment is denied.

**BACKGROUND**

By defaulting, Defendants have admitted the well-pleaded allegations of the complaint. *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011). The Court therefore assumes the truth of the well-pleaded allegations for purposes of this motion.

Plaintiffs EYB and Villa are both Delaware limited liability companies with principal places of business in New Jersey, registered to do business in the State of New York. Compl. ¶¶ 5–6. Plaintiffs are franchisors of restaurants operating under various brand names, including Villa Pizza, South Philly Cheesesteaks & Fries, and Cozzoli's Pizza. *Id*. ¶ 1. Corporate Defendants are foreign companies with principal places of business in Catania, Italy. *Id*. ¶¶ 15– 23. Individual Defendants are individuals residing within Catania, Italy. *Id*. ¶¶ 7–13.

Plaintiffs entered into nine franchise agreements with Defendants "for restaurants located in Catania, Novaro, Viterbo, and Rome in Italy." *Id*. ¶ 2. All Defendants were either parties to the franchise agreements or acted as guarantors to those agreements. *Id*. ¶¶ 27, 29, 39, 41, 52, 54, 65, 67, 77, 79, 89, 91, 101, 103, 114, 116, 127, 129. Plaintiffs allege that Defendants failed to pay royalties to Plaintiffs as stipulated in the franchise agreements. *Id*. ¶ 2. Defendants have not paid royalties since October 2017. *Id*.

**PROCEDURAL HISTORY**

Plaintiffs filed this action on February 14, 2023, asserting claims for (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; and (3) unjust enrichment. Compl. ¶¶ 141–167. Plaintiffs brought each claim against the Corporate Defendants as parties to the franchise agreements and against the Individual Defendants as personal guarantors to the franchise agreements. Compl. ¶¶ 141–167. Plaintiffs caused all Defendants to be served either electronically or by mail, pursuant to the Hague Convention and local Italian law. Dkt. No. 76 at 2. Plaintiffs subsequently filed proof of service as to all Defendants on or by April 10, 2024.

2

Dkt. No. 78 at 1.  When Defendants failed to timely answer, appear, or otherwise respond to the complaint, Plaintiffs sought and obtained from the Clerk of Court a Certificate of Default against Defendants.  Dkt. Nos. 72–74.  On May 10, 2024, Plaintiffs moved for default judgment against Defendants pursuant to Federal Rule of Civil Procedure 55.  Dkt. No. 75.  On June 10, 2024, the Court issued an order noting that, contrary to the complaint's allegations that the contracts underlying this action have forum selection clauses designating New York, New York as the appropriate forum, the contracts have only a *choice-of-law* provision designating New York law as the law governing the interpretation of the contracts and a provision that provides for arbitration in New York.  Dkt. No. 79.[1]  Thus, the Court ordered Plaintiffs to show cause why New York is the proper forum and why the Court has personal jurisdiction over Defendants.  *Id*. Plaintiffs responded via a letter submitted on June 13, 2024, arguing that New York is the proper forum and the Court has personal jurisdiction over Defendants.  Dkt. No. 80.

## LEGAL STANDARD

Federal Rule of Civil Procedure 55 sets forth a two-step procedure to be followed for the entry of judgment against a party who fails to defend: the entry of a default and the entry of a default judgment.  *See New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005).

---

[1] Plaintiffs' allegation in the complaint that the contracts contained a forum selection clause designating New York, New York as the appropriate forum are directly contradicted by Plaintiffs' own submission of those contracts, which contain no such clause.  The Court may consider these documents because "where a plaintiff alleges a claim based on a written instrument, if the documents contradict the allegations of a plaintiff's complaint, the documents control and the court need not accept as true the allegations in the complaint."  *See 2002 Lawrence B. Buchalter Alaska Trust v. Philadelphia Financial Life Assur. Co.*, 96 F.Supp.3d 182, 199 (S.D.N.Y. 2015); *see also Mockingbird 38, LLC v. International Business Times, Inc.*, 2022 WL 154137, at *3 (S.D.N.Y. Jan. 18, 2022) (court need not accept as true an allegation that is contradicted by documents on which the complaint relies).

The first step, entry of a default, simply "formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff." *Mickalis Pawn Shop*, 645 F.3d at 128; *see* Fed. R. Civ. P. 55(a).  The second step, entry of a default judgment, "converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled, to the extent permitted" by the pleadings.  *Mickalis Pawn Shop*, 645 F.3d at 128; *see also* Fed. R. Civ. P. 55(b).

Whether entry of default judgment at the second step is appropriate depends upon whether the well-pleaded allegations against the defaulting party establish liability as a matter of law.  *See Mickalis Pawn Shop*, 645 F.3d at 137.  While a defendant who defaults admits the well-pleaded factual allegations in a complaint, because a party in default does not admit conclusions of law, "a district court need not agree that the alleged facts constitute a valid cause of action."  *Id.* (citation omitted).  Therefore, this Court is "required to determine whether the [plaintiff's] allegations are sufficient to establish the [defendant's] liability as a matter of law."  *Finkel v. Romanowicz*, 577 F.3d 79, 85 (2d Cir. 2009).

The legal sufficiency of a non-defaulting party's claims "is analyzed under the familiar plausibility standard enunciated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), aided by the additional step of drawing inferences in the movant's favor."  *WowWee Grp. Ltd. v. Meirly*, 2019 WL 1375470, at *5 (S.D.N.Y. Mar. 27, 2019) (Nathan, J.).

## DISCUSSION

In addition to considering whether the well-pleaded allegations establish liability as a matter of law, a court also "may first assure itself that it has personal jurisdiction over the defendant" before entering a default judgment.  *Mickalis Pawn Shop,* 645 F.3d at 133; *see also*

*Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010). The court is not *required* to determine it has personal jurisdiction before entering a default judgment. *See CKR Law LLP v. Anderson Investments International, LLC*, 544 F. Supp.3d 474, 479 (S.D.N.Y. 2021). The Court here determines it is appropriate to consider whether it has personal jurisdiction and, determining that it does not have such jurisdiction, it denies the motion for a default judgment.

The approach taken by Judges Cogan and Rakoff is persuasive. "When the question of personal jurisdiction is close or unsettled, … courts [might well] hesitate before undertaking an examination of their personal jurisdiction over a defaulting defendant." *Kaplan v. Hezbollah*, 2022 WL 2207263, at *3 (E.D.N.Y. 2022). In such a case, if the court, in the absence of adversarial briefing, makes the wrong judgment and erroneously determines it has jurisdiction over the defaulting defendant, that defendant "could later attack the default judgment as void either under [Federal Rule of Civil Procedure] Rule 60(b)(4) or on direct appeal." *CKR Law LLP*, 544 F. Supp.3d at 480. Judicial efficiency would be disserved by that result. "A court would then have to re-analyze the personal jurisdiction issue, thereby duplicating work." *Id.* If the court, also in such a close case, were to determine it lacks personal jurisdiction, it might well confer on the defendant a benefit to which it would not be entitled had the defendant appeared. Even in the absence of well-pleaded allegations of personal jurisdiction, a court has a panoply of options including "order[ing] the defendant to produce discovery on the issue of personal jurisdiction." *Kaplan*, 2022 WL 2207263, at *3. A judgment in a close case ruling that the court lacks personal jurisdiction risks "handicap[ping] the plaintiff by depriving her of discovery that she would have had if the defendant had not defaulted," thereby creating the "unseemly impression that the court is acting to protect the defaulting defendant rather than the scope of its

5

authority." *Id.*

By contrast, where "plaintiff's submissions clearly show an absence of personal jurisdiction," judicial efficiency is served and not disserved by addressing that issue. *See Kaplan*, 2022 WL 2207263, at *2; *see also Chen v. Best Miyako Sushi Corp.*, 2021 WL 707273, at *6 (S.D.N.Y. Feb. 1, 2021), *report and recommendation adopted* 2021 WL 706412 (S.D.N.Y. Feb. 19, 2021) ("Where, as here, the plaintiffs' filings 'raise questions' as to whether the court may permissibly exercise personal jurisdiction over a defendant who has never appeared, it is well-settled that the court should [. . .] consider sua sponte whether the plaintiff has set forth facts justifying the assertion of personal jurisdiction."). A court need not engage in the analysis as to whether the well-pleaded allegations state a claim for relief and whether, if they do so, engage in the determination of the relief to which the plaintiff is entitled. It avoids issuing a judgment that is illusory.

Plaintiff's submissions here clearly show an absence of personal jurisdiction.

"In diversity cases, the issue of personal jurisdiction is governed by the law of the forum state." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 104 (2d Cir. 2006). There are essentially three ways that this Court might have jurisdiction over the Defendants. First, Defendants could have contractually consented to personal jurisdiction in this forum. *Id.* at 104. A party can waive personal jurisdiction or can consent to it through a valid forum selection clause. *See, e.g.*, *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383-84 (2d Cir. 2007). Absent consent, the Court might have general or specific jurisdiction over Defendants under N.Y. C.P.L.R. §§ 301 or 302, respectively. *See, e.g.*, *Aybar v. Aybar*, 37 N.Y.3d 274, 282 (N.Y. 2021); *In re Foreign Exchange Benchmark Rates Antitrust Litigation*, 2016 WL 1268267, at *2–4 (S.D.N.Y. Mar. 31, 2016).

6

## I.    Personal Jurisdiction by Contractual Consent

Plaintiffs argue that the Court has personal jurisdiction over Defendants because Defendants contractually consented to such jurisdiction by virtue of an arbitration clause in the parties' franchise agreement.  Plaintiffs claim that because the franchise agreement contains an arbitration clause specifying New York as the forum for arbitration, the parties have necessarily consented to personal jurisdiction in New York courts, and it makes no difference that the Plaintiffs chose to file a suit in this Court rather than pursue arbitration.  Dkt. No. 80 at ECF pp. 1–2.  Plaintiffs also point out that the franchise agreement has a New York choice-of-law provision.  *Id*. at ECF p. 2.

The Second Circuit has held that by agreeing to arbitrate in New York, a party is deemed to have consented to the jurisdiction of a New York court to compel arbitration.  *See Victory Transp. Inc. v. Comisaria Gen. de Abastecimientos y Transportes*, 336 F.2d 354, 363 (2d Cir. 1964), *cert. denied*, 381 U.S. 934 (1965); *see also Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 352 (2d Cir. 1999) (New York court had personal jurisdiction over parties based on contractual arbitration clause to compel arbitration); *Merrill Lynch v. Lecopulos*, 553 F.2d 842, 844 (2d Cir. 1977).  "An agreement to arbitrate before a specified tribunal is, in effect, a specified kind of forum-selection clause that posits [both] the situs of the suit [and] also the procedure to be used in resolving the dispute."  *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974).  The conclusion that the agreement carries with it consent to a New York court's jurisdiction to compel arbitration thus follows from general principles of contract interpretation.  "To hold otherwise would be to render the arbitration clause a nullity" and thus its protections illusory.  *Victory Transp. Inc.*, 336 F.2d at 363.  Courts have also held that contractual consent to arbitration in New York carries with it implied consent to the jurisdiction of the New York courts to confirm the arbitral award, *see Absolute Nevada, LLC v. Grand Majestic Riverboat Co., LLC*,

7

646 F.Supp.3d 426, 439 (S.D.N.Y. 2022) and to an action to stay arbitration, *see Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Shaddock*, 822 F.Supp. 125, 128 (S.D.N.Y. 1993) (New York court had personal jurisdiction for purpose of determining whether to stay arbitration).

The scope of the parties' consent to the jurisdiction of the New York courts, however, can extend no further than what is implied by their agreement to arbitrate in New York, *i.e.*, that they agree to the jurisdiction of the New York courts on matters necessary to make the clause effective. *Cf. Phillips v. Audio Active, Ltd.*, 494 F.3d 378, 389 (2d Cir. 2007) (forum selection clause only applicable to claims within scope of parties' agreement because the scope of a forum selection clause is a contractual question). By agreeing to arbitrate in New York, the parties cannot be deemed to have consented to the jurisdiction of the New York courts with respect to all matters arising out of their contractual relationship. *See Shalik v. Coleman*, 975 N.Y.S.2d 741, 743 (2d Dep't 2013) ("Although an agreement to arbitrate disputes in New York constitutes consent to personal jurisdiction in New York, such consent is limited to enforcement of the arbitration award or other arbitration-related proceedings . . . [but does not] give the [court] jurisdiction over the [party] for the purpose of adjudicating the plaintiff's cause of action at law for breach of the [agreement]" (internal citations omitted)); *Moriac Shipping Co., Ltd. v. Meta Corp.*, 2006 WL 89939, at *3 (S.D.N.Y. Jan. 12, 2006) ("While an agreement to arbitrate in a given venue at least arguably constitutes a consent to personal jurisdiction in that venue for the purpose of enforcing the agreement to arbitrate, this consent goes no farther than proceedings relating to enforcement of the arbitration agreement" (internal citation omitted)); *Kahn Lucas Lancaster, Inc. v. Lark Intern. Ltd.*, 956 F. Supp. 1131, 1139 (S.D.N.Y. 1997) (explaining that the rationale of *Lecopulos* means that a court that has personal jurisdiction by virtue of an arbitration agreement has personal jurisdiction only in support of arbitration); *Merrill Lynch v.*

8

*East*, 1993 WL 764642, at *2 (N.Y. Sup. Ct. Nov. 4, 1993) ("[I]t is well-settled that an arbitration clause containing a forum selection will be upheld by courts, but it is equally well-settled that such a clause will be enforced only insofar as it applies to arbitration proceedings and will not be construed to mean consent to jurisdiction in the courts of New York State."); *Sterling Nat'l Bank & Trust Co. of N.Y. v. S. Scrap Export Co.*, 468 F. Supp. 1100 (S.D.N.Y.1979) ("[A]n arbitration clause is normally deemed to be a consent to the jurisdiction of the state or federal court only with regard to the enforcement of the arbitration clause itself, not with regard to any other dispute that may arise between the parties."). A contrary conclusion would render the limits of the forum selection clause—to arbitration in New York—illusory. *See Scherk*, 417 U.S. at 519.

Thus, the franchise agreements cannot be construed as consent by Defendants to the personal jurisdiction of this Court to resolve the parties' contract dispute. Those agreements state, in relevant part, that:

> [U]pon written notice to all parties, all controversies, disputes or claims arising between Franchisor, any of its affiliates or any of its respective officers, directors, agents, employees and attorneys and Franchisee, any of its affiliates or each of Franchisee's individual Owners, arising out of or related to the relationship of the parties hereto or this Agreement (the "Dispute") shall be settled by binding arbitration in accordance with the then-current UNCITRAL Arbitration Rules, in New York, New York, USA.

Dkt. No. 80-1, ECF. P. 3. That language is sufficient consent to compel Defendants to defend against an arbitration sited in New York.[2] It is also sufficient consent to subject Defendants to

---

[2] Notably, however, the language did not itself preclude Plaintiffs from initiating this litigation. The arbitration clause in the franchise agreements simply gave the parties the right to demand arbitration but did not foreclose them from choosing to sue in court in the first instance. *See, e.g., Emilio v. Sprint Spectrum L.P.*, 2014 WL 902564 at *10 (S.D.N.Y. Feb. 11, 2014) (party who initiated arbitration proceedings was also free to sue in court and wait for other party to compel arbitration); *Lecopulos*, 553 F.3d at 845 (citing *The Anaconda v. American Sugar Co.*, 322 U.S. 42, 44–45 (1964)). *Cf. In re Currency Conversion Fee Antitrust Litigation*, 361 f.Supp.2d 237, 257 (S.D.N.Y. 2005) (parties can waive arbitration provisions); *P.S. Finance,*

personal jurisdiction in an action to compel arbitration or to confirm an arbitration award rendered in New York. *See Lecopulos*, 553 F.2d 842 at 844. But it is not sufficient to subject Defendants to an action for breach of the franchise agreements in the absence of an underlying arbitration proceeding.[3]

## II.    General Personal Jurisdiction

A defendant is subject to general personal jurisdiction if he is "engaged in such a continuous and systematic course of 'doing business' [in New York] as to warrant a finding of its 'presence' in this jurisdiction." *Laufer v. Ostrow*, 434 N.E.2d 692, 694 (N.Y. 1982) (quoting *McGowan v. Smith*, 419 N.E.2d 321, 323 (N.Y. 1981)). Defendants do not appear to contend that the Court has general jurisdiction over Defendants and there are no allegations in the complaint that suggest any of the Defendants have ever set foot in New York nor that they have engaged in any continuous and systematic course of doing business here. Thus, the Court does not have general personal jurisdiction over Defendants.

## III.    Specific Personal Jurisdiction

New York's long-arm statute, C.P.L.R. Section 302(a), provides for specific personal jurisdiction. It states:

> (a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction

---

*LLC v. Eureka Woodworks, Inc.*, 184 N.Y.S. 3d 114, 124–125 (2d Dep't 2023) (same and noting that because, like all contractual rights, an arbitration provision can be waived, modified, or abandoned, courts should not enforce arbitration provisions *sua sponte* absent request from the parties). Thus, the defect in Plaintiffs' application is not that it chose to sue, but that it has chosen to sue in a jurisdiction as to which it has not established that Defendant is subject to personal jurisdiction.

[3] Neither is a New York choice-of-law provision "consent" to personal jurisdiction in New York. *See, e.g., ESI, Inc. v. Coastal Corp.*, 61 F.Supp.2d 35, 59 (S.D.N.Y. 1999) (contrasting choice-of-law provisions, which are not sufficient on their own to establish personal jurisdiction, with forum-selection or consent to jurisdiction clauses); *Pal Pools, Inc. v. Billiot Bros., Inc.*, 394 N.Y.S.2d 280, 281 (2d Dep't 1977) (choice of law clause not consent to jurisdiction in New York).

over any non-domiciliary, or his executor or administrator, who in person or through an agent:

1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or

2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce[.]

N.Y. C.P.L.R. § 302(a). In determining specific jurisdiction over a non-domiciliary, New York courts engage in a two-step analysis. *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010) (citing *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 243–44 (2d Cir. 2007)). The first step is the application of New York's long-arm statute. *Id*. If the exercise of personal jurisdiction is deemed appropriate pursuant to the long-arm statute, the second step is to determine "whether personal jurisdiction comports with the Due Process Clause of the United States Constitution." *Id*. at 164; *see also Spetner v. Palestine Inv. Bank*, 70 F.4th 632, 639 (2d Cir. 2023); *Moonbug Ent. Ltd. v. Autumn Sell*, 2023 WL 2051247, at *6 (S.D.N.Y. Feb. 16, 2023).

Under New York C.P.L.R. § 302(a), personal jurisdiction is proper where a party transacts business in this state, agrees to provide goods or services here, or commits a tort here if he also conducts a persistent course of conduct here or should reasonably expect the tortious act to have consequences in this state. None of these are applicable.

11

There is no allegation that Defendants committed a tort here or agreed to provide goods and services here.  Thus, the only potential for specific jurisdiction is under N.Y. C.P.L.R. § 302(a)(1)—*i.e.*, that Defendants transacted business here.  "To establish personal jurisdiction under § 302(a)(1), two requirements must be met: (1) The defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity."  *Hill v. HSBC Bank plc*, 207 F. Supp.3d 333, 338 (S.D.N.Y. 2016) (internal citations omitted).  A foreign party "transacts business" in New York when, looking at the totality of the circumstances, he "purposefully avails [himself] of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws."  *Id*.; *see also DF Ventures, LLC v. Aaron & Gianna, PLC*, 2024 WL 916343, at *6 (S.D.N.Y. Mar. 4, 2024).  Courts look at the "nature and quality" of a party's contacts with New York to determine whether the purposeful availment standard is satisfied.  *Hill*, 207 F.Supp.3d at 338.  "In a contract action, to determine whether an out-of-state defendant 'transacts business' in New York within the meaning of the long-arm statute, courts focus on the following factors: (i) whether the defendant has an on-going contractual relationship with a New York corporation; (ii) whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (iii) what the choice-of-law clause is in any such contract; and (iv) whether the contract requires franchisees to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state."  *Orchard Yarn and Thread Co., Inc.*, 2018 WL 2694433, at *2 (S.D.N.Y. June 5, 2018) (citing *Sunward Elecs., Inc. v. McDonald*, 362 F.2d 17, 22 (2d Cir. 2004)); *see also N. Fork Partners Inv. Holdings, LLC v.*

12

*Bracken*, 2020 WL 6899486, at *9 (S.D.N.Y. Nov. 23, 2020).  "Another important factor is whether the contract is to be performed in New York."  *Orchard Yarn*, 2018 WL 2694433, at *2.

Defendants' only alleged connections to New York here are the arbitration clause and the New York choice-of-law clause in the franchise agreements and that *Plaintiffs* are registered to do business in New York.  Defendants are all individuals residing in Italy or Italian companies with principal places of business in Italy.  Compl. ¶¶ 7–26.

Although Plaintiffs are registered to do business in New York, they are incorporated in Delaware and have their principal places of business in New Jersey.  Compl. ¶ 5, 6.  And in any event, the focus of New York C.P.L.R. § 302(a)(1) is "on what the non-domiciliary defendant did in New York and not on what the plaintiffs did."  *See In re SSA Bonds Antitrust Litig.*, 420 F.Supp.3d 219, 231 (S.D.N.Y. 2019).  There is no allegation that Defendants are registered to do business in New York and no allegation even that Defendants would have known Plaintiffs were registered to do business in New York, given they are Delaware corporations who operate principally in New Jersey.

And while the choice-of-law provision is a factor weighing towards specific personal jurisdiction, it is not enough on its own to show that Defendants purposefully availed themselves of the privilege of conducting activities within New York.  *See, e.g.*, *America/Internation 1994 Venture v. Mau*, 42 N.Y.S. 3d 188, 202 (2d Dep't 2016) ("A choice of law provision in an agreement, while relevant, is insufficient by itself to confer personal jurisdiction over a defendant in New York under CPLR 302(a)(1)") (internal citations omitted); *Bayshore Cap. Advisors, LLC v. Creative Wealth Media Fin. Corp.*, 667 F.Supp. 3d 83, 140 (S.D.N.Y. 2023) (same).

There are no allegations, for example, that Defendants came to New York to negotiate or executed the franchise agreements in New York. The franchise agreement deals with restaurants operating in Italy and is denominated in Euros, Dkt. No. 5 ¶¶ 2, 26. *Compare Wilson v. Dantas*, 9 N.Y.S. 3d 187, 193–94 (1st Dep't 2015) (personal jurisdiction established where defendants entered New York to negotiate and execute contracts with New York entities) *with Orchard Yarn*, 2018 WL 2694433, at *2–3 (personal jurisdiction not established where contract contained New York choice-of-law provision and plaintiff was New York company, but there were no allegations that contract was negotiated in New York, that defendant ever came to New York, or that products which were subject of contract were sold in New York); *Int'l Customs Assoc., Inc. v. Ford Motor Co.*, 893 F. Supp. 1251, 1260–63 (S.D.N.Y. 1995) (personal jurisdiction not established where contract contained New York choice-of-law provision but negotiations and execution conducted in Taiwan or by mail or phone, fees were to be paid in Taiwanese currency, and substantial part of contract performance was to occur in Taiwan). *Cf. Hill*, 207 F. Supp.3d at 339 (communications and payments into New York to ensure compliance with contract negotiated and executed outside of New York not sufficient to confer personal jurisdiction).

Foreign individuals and companies whose only connection to New York is that they signed a franchise agreement with a Delaware corporation whose principal place of business is in New Jersey cannot be said to have subjected themselves to personal jurisdiction for a New York court to resolve a claim for breach of that franchise agreement, even if the franchise agreement contains a New York choice-of-law provision and a provision designating New York as the forum for arbitration.[4]

---

[4] Because the Court finds that there is no personal jurisdiction under New York law, the Court need not analyze whether personal jurisdiction would comport with Due Process. *See, e.g., Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 75 (2d Cir. 2012); *SOS Cap. v.*

## CONCLUSION

For the foregoing reasons, the motion for default judgment is DENIED.

The Clerk of Court is respectfully directed to close Dkt. No. 75.


SO ORDERED.

Dated: July 22, 2024
       New York, New York

                                                LEWIS J. LIMAN
                                 United States District Judge

---

*Recycling Paper Partners of PA, LLC*, 196 N.Y.S. 3d 382, 393 (1st Dep't 2023).

15